Beaumont v Smyth (2004 NY Slip Op 50040(U))

[*1]

Beaumont v Smyth

2004 NY Slip Op 50040(U)

Decided on January 9, 2004

Supreme Court, Onondaga County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 9, 2004

Supreme Court, Onondaga County
 BRIAN L. BEAUMONT, Plaintiff,
against
MICHAEL P. SMYTH and FEDERAL EXPRESS CORPORATION, COUNTY OF ONONDAGA and TOWN OF VAN BUREN, Defendants.
Index No.01-4917
Appearances:

For the Plaintiff: Alexander & Catalano, LLP
By: James L. Alexander, Esq. Of Counsel
For the Defendants: Cambs Law Firm, LLP
By: Peter J. Cambs, Esq. Of Counsel for Smyth & Federal Express
Mackenzie Hughes, LLP
By: Stephen T. Helmer, Esq. Of Counsel for Town of Van Buren

EDWARD D. CARNI, J.
DECISION
Introduction
Plaintiff Brian L. Beaumont brings this motion seeking three forms of relief, to wit; an order of summary judgment on the issue of liability; dismissal of defendants' affirmative defense relating to Plaintiff's alleged culpable conduct and comparative fault and leave to amend Plaintiff's Bill of Particulars.
There is no opposition to plaintiff's motion for leave to amend Plaintiff's Bill of Particulars and that motion is granted.
Defendant Town of Van Buren (hereinafter the "Town") cross-moves seeking an order of summary judgment dismissing Plaintiff's complaint and all cross-claims asserted by the co-defendants.
Defendants Michael P. Smyth and Federal Express Corporation both oppose the summary judgment motions of the Plaintiff and the Town. All parties agree that discovery is complete and that there is no need for any further discovery in order for the parties to advance and oppose these motions or any of the factual or legal arguments asserted therein.

[*2]Factual Background
This action arises out of a motor vehicle accident which occurred on July 20, 2001 at approximately 1:35 pm. Plaintiff was operating a 1996 Honda motorcycle in a southerly direction on New York State Route 31. At the same time, Defendant Michael Smyth was operating a 1995 Federal Express delivery van in the course of his employment as a delivery person for Defendant Federal Express. Mr. Smyth was driving in an easterly direction on Connors Road which is a two lane road owned by the Town. Connors Road is an intersecting highway with NYS Rte 31. At this intersection, vehicles traveling easterly on Connors Road, such as Mr. Smyth's, are controlled at the intersection by a "Stop" sign. There is no dispute that this "Stop" sign was installed by the State of New York. Motorists traveling on NYS Rte 31 in a southerly direction, such as Plaintiff, do not encounter any traffic control devices at the intersection with Connors Road which restrict or control traffic through the intersection.
There is no dispute that Defendant Smyth did not bring his vehicle to a complete stop at the "Stop" sign controlling his lane and direction of travel before entering the intersection and crossing over NYS Rte 31. Unfortunately, Defendant Smyth observed the "Stop" sign at the last second, slammed on his brakes and slid into the intersection. At this very moment, Plaintiff was approaching and entering the intersection from Smyth's left and the Federal Express van and Plaintiff's motorcycle collided and Plaintiff sustained severe and permanent injuries.
The immediate approach to NYS Rte 31 upon Connors Road in an easterly direction is a substantial uphill grade. There was also a yellow "Stop Ahead" sign on the southerly side of Connors Road which was installed by the State of New York as an advisory sign to warn motorists of the approaching "Stop" sign at the intersection with NYS Rte 31. There is no dispute that this advisory sign was placed approximately 30 feet easterly of a small bridge on Connors Road. This bridge was itself approximately 560 feet west of the "Stop" sign. The bridge was signed with four yellow and black clearance marker signs which are required to be placed upon a bridge to warn motorists of the existence and location of the bridge side walls. These clearance markers were installed and maintained by the Town.
The parties were unable to provide the court with any information concerning the sequencing of the installation of the "Stop Ahead" sign by the State and the bridge clearance markers by the Town. In other words, there is nothing in this record to establish which signage was installed before the other.
Connors Road does not have a posted speed limit. All parties agree that the applicable speed limit would therefore be 55 miles per hour. Plaintiff submits the affidavit of an engineer and accident reconstructionist who opines that the speed of the Federal Express van, at the onset of braking, was "50-59 miles per hour." Defendant Smyth testified at deposition that he estimated his vehicle's speed at "50 miles per hour" just before he slammed on his brakes.[FN1]
[*3]
There is no dispute that defendant Smyth was unfamiliar with Connors Road as this was his first time traveling this road. Smyth testified that as he ascended the uphill grade after crossing over the bridge on Connors Road, he could not and did not see the intersecting highway (NYS Rte 31) and the "Stop" sign until he was right upon them. Smyth alleges that the "Stop" sign was obscured by foliage and that the uphill grade concealed the existence of the intersecting road, NYS Rte 31.
The accident was investigated by the Onondaga County Sheriff's Department. The police accident report issued by that agency states:
"The following should be noted. The stop sign at the intersection of Route-31 and Connors road was partially obstructed by leaves and hanging tree limbs. However, upon driving Connors Road in the same direction that Vehicle-1 was traveling just prior to the accident, there is a yellow traffic control device about 100 yards before the intersection of Connors Road and Route-31 indicating a stop sign ahead."
Defendant Smyth also testified that the "Stop Ahead" sign was obscured by vegetation and that the bridge clearance markers "just flow[ed] right into" the "Stop Ahead" sign.
Legal Arguments and Analysis
Plaintiff's Motion
Plaintiff advances a number of theories in support of his application for summary judgment in his favor on the issue of liability as against Defendants Smyth and Federal Express. Initially, Plaintiff argues that there is no material issue of fact regarding Defendants Federal Express's and Smyth's negligence being a proximate cause of the accident. According to Plaintiff, it is uncontroverted that Plaintiff had the right-of-way and was entitled to anticipate that the defendants would stop at the "Stop" sign. Plaintiff's counsel argues that Plaintiff had no opportunity to avoid the collision. According to Plaintiff's counsel, comparative fault is not an issue and Plaintiff is entitled to summary judgment on the issue of liability.
Plaintiff submitted his deposition transcript in support of this motion. Plaintiff testified that he has no recollection of the facts and circumstances contemporaneous with the accident. The moving papers do not contain an affidavit by the Plaintiff. The record is devoid of any [*4]factual information from anyone with personal knowledge as to Plaintiff's operation of his motor vehicle immediately prior to the accident. [FN2] Defendant Smyth never observed the Plaintiff's vehicle until the last few seconds (if that many) before the collision.
Plaintiff argues that there is evidence that the "Stop Ahead" sign was visible at the date and time of the accident. For example, Plaintiff points to the deposition testimony of Deputy Latzkowski who stated that the following day, when continuing his investigation of the accident, he observed the "Stop Ahead" sign on Connors Road. According to Plaintiff's counsel, the Deputy had "absolutely no difficulty observing the stop-ahead sign." However, an accurate reading of the Deputy's transcript reveals that the Deputy testified as follows:
"Q. What kind of signage were you specifically looking for?
 A. Warning signs, stop sign ahead signs, things of that nature. Speed limit signs, stuff like that." (Latzkowski Tr at 18) (Emphasis supplied).
****
"Q. The next day when you traveled on Connors Road, did you have any difficulty observing the stop ahead sign?
 A. No, but I was very conscious that there was a stop sign ahead of me because the incident that took place yesterday. So I was cautious approaching the intersection." (Latzkowski Tr at 23).
Deputy Latzkowski also testified that he was driving his patrol vehicle when he made these observations.
Plaintiff's counsel also argues that the Federal Express Vehicle Accident Report establishes Defendants Smyth's and Federal Express's liability. According to Plaintiff's counsel the indication in this report that this accident was "preventable", supports Plaintiff's theory. [FN3] Additionally, there are photographs in the report which, according to Plaintiff's counsel, show the "Stop Ahead" sign as "visible and unobstructed." However, Plaintiff's counsel fails to indicate to the court whether any witness identified these photographs as fairly and accurately depicting the accident scene and the signage conditions and, more importantly, whether the photos accurately depicted Defendant Smyth's line and field of vision when he was operating the FedEx van on Connors Road at an apparently lawful speed of 50 miles per hour.
 Plaintiff's counsel argues that "Defendant Smyth even admitted that when he visited the site, the ["Stop Ahead"] sign was visible." This is a mischaracterization of Defendant Smyth's [*5]testimony. In fact, Smyth testified as follows:
"Q. And when you went back down to the bridge area on that evening did you see a diamond-shaped, yellow, reflective sign that said stop ahead?
 A. While we were standing there, yes." (Smyth Tr at 93-94) (Emphasis supplied).
****
"Q. Was any portion of that sign as you were on the bridge that evening looking at it obscured or covered by vegetation or any other object?
 A. Yes.
 Q. I want you to explain that to me.
 A. There was branches hanging from a tree in front of it, and it looked like the bridge signs, the bridge warning sign, like the warning - the rectangular signs were just flowing right into it." (Smyth Tr at 99) (Emphasis suppled).
Plaintiff's counsel argues that a videotape taken by Defendant Smyth's friend on the day of the accident "verifies that the yellow stop-ahead sign just past the bridge on the right hand side was clearly visible and unobstructed on the day the accident occurred."
Again, Plaintiff's counsel fails to provide the court with any sworn statement or testimony by anyone with personal knowledge that the videotape fairly and accurately depicts the accident scene and the signage and, more importantly, that the video was recorded at the same speed, under the same lighting conditions and from the same vantage point and perspective of Defendant Smyth when he was operating the FedEx van. It is elementary that the visibility of any signage depends upon the line of sight, the speed of the vehicle, the driving position and height of the operator and the lighting conditions. Plaintiff's counsel fails to address any of these issues.

Obviously, one would be able to see the sign if one was standing next to it, specifically looking for it (as was Deputy Latzkowski the day after the accident) or attempting to videotape it from six feet away. However, the undisputed facts make it clear that these scenarios are far removed from the circumstances which gave rise to this accident.
Insofar as the ability of Defendant Smyth to see and react to the "Stop Ahead" sign and the "Stop" sign is concerned, this court finds that there are multiple and complex material questions of fact that preclude summary judgment. It is fundamental that when a defendant presents evidence in admissible form to the effect that a "Stop" sign or other form of sign is obscured or not sufficiently visible, there are at least two issues for the jury to determine. The first is whether the sign was sufficiently visible to be seen by an ordinarily observant person.[FN4] [*6]The second is whether the defendant knew or had reason to know that the intersecting road was a through highway (see, NYPJI 2:80B, Motor vehicle Accidents-Duties of Motorists Where Stop Sign is Missing or Obscured; Mays v Weiman, 73 AD2d 639 [2d Dept 1979]).
Here, Defendant Smyth contends that he didn't see the "Stop" sign and the "Stop Ahead" sign because they were obscured by foliage and the placement of the "Stop Ahead" sign was in conflict with the bridge clearance signs. Plaintiff contends that the signs were not obscured.
Smyth also alleges that he did not know that there was a through highway that intersected Connors Road at the site of the collision. Plaintiff has not rebutted this allegation. According to the commentary to NYPJI 2:80B, if the driver is not aware that the intersecting highway is a through highway, "the situation is governed by VTL § 1140 concerning uncontrolled intersections" (see, PJI 2:78). [FN5]
Vehicle and Traffic Law § 1140 (b) provides as follows:
"When two vehicles enter an intersection from different highways at approximately the same time the driver of the vehicle on the left shall yield the right of way to the vehicle on the right" (Emphasis supplied).[FN6]
[*7]
Defendants Smyth and Federal Express have submitted more than ample evidence in admissible form in support of their theories to raise a question of fact sufficient to defeat Plaintiff's summary judgment.
Plaintiff's entire argument, when pared down to its essence, is based upon the proposition that Defendant Smyth is not credible in asserting that the signs were obscured, he didn't know there was a through highway, and there was a conflict in the bridge signage. These issues, however, present factual issues to be resolved by a jury. Therefore, Plaintiff's motion for summary judgment on the issue of liability as against Defendants Smyth and Federal Express is denied.
The Town's Motion
The Town cross-moves for summary judgment dismissing Plaintiff's complaint and the Defendants' cross-claims. Plaintiff does not oppose the Town's motion and the court therefore grants the Town's motion dismissing the Plaintiff's complaint as against the Town. This leaves the cross-claims of Defendants Smyth and Federal Express as the procedural vehicles asserting liability theories of contribution and indemnification against the Town.
In its moving papers, the Town advances the following theories of entitlement to summary judgment dismissing the Defendants' cross-claims:
1. The Town did not own, control, install or maintain the "Stop Ahead" sign or the "Stop" sign in issue.
2. The "Stop" sign and the intersection at issue were, pursuant to Vehicle & Traffic Law § 1621 (a) (1), under the exclusive jurisdiction and control of the State of New York and the Town therefore had no duty to maintain the sign.
3. The "Stop Ahead" sign was not obscured and any conflict in signage between this sign and the bridge clearance markers was not the responsibility of the Town.
4. The Town did not receive prior written notice of the allegedly defective signs and highway conditions prior to the accident as required by Town of Van Buren Local Law # 3.
The Town's Prior Written Notice Defense
The prior written notice defense is potentially dispositive without regard to the merits of Defendants' other contentions. Therefore the court will address this defense in the first instance.
Town of Van Buren Local Law # 3 provides, in pertinent part, as follows:

"No civil actions shall be maintained against any town of [sic] town superintendent of highways for damages or injuries to person or property [*8]sustained by reason of any highway, bridge, street, sidewalk, crosswalk or culvert being defective, out of repair, unsafe, defective, dangerous or obstructed unless written notice of such defective, unsafe, dangerous or obstructed condition of such highway, bridge, street, sidewalk, crosswalk or culvert was actually given to the town clerk or town superintendent of highways, and there was a failure or neglect within a reasonable time after the giving of such notice to repair or remove the defect, danger or obstruction complained of." [FN7]
Prior written notice statutes do not apply to defective traffic signs (Doremus v Vil. Of Lynbrook, 18 NY2d 362 [1966]) or signs obstructed by untrimmed trees or foliage (see, Dishaw v Central New York Regional Transportation Authority, 179 AD2d 1088 [4th Dept 1992]; Torres v Galvin, 189 AD2d 870 [2nd Dept 1993] [Since the gravamen of the claims against the Village was that untrimmed vegetation obstructed a stop sign, thus rendering the sign defective, Village Law § 6-628 does not apply]). The law on this point is so well settled that any argument to the contrary is without merit.
Accordingly, the court finds that to the extent Defendants' liability theories against the Town assert defective, improperly placed or obstructed traffic signs, Town of Van Buren Local Law # 3 is inapplicable.
The "Stop" Sign
There is no dispute that the Town did not own or install the "Stop" sign or "Stop Ahead" sign at issue. Additionally, there is no proof in the record that the Town voluntarily undertook a duty of maintenance with respect to either sign.
However, Defendants submit a survey map from a licensed surveyor which indicates that the "Stop" sign was sited and placed within the Town's right-of-way upon Connors Road. According to the sworn affidavit of Defendants' surveyor, Stephen Sehnert, the "Stop" sign was located 21.28 feet from the center of Connors Road within the Town's right-of-way on the date of the accident. Furthermore, according to Mr. Sehnert:

"The tree trunk in closest proximity to the STOP sign is located on the State's right-of-way but the branches which obstructed the STOP sign at the time of the accident, overhung onto the Town's right-of-way."
"The STOP AHEAD sign located near the bridge on Connors Road is located within the Town's right-of-way. The trees and foliage which obstructed the STOP AHEAD sign, on the day of the accident, were also located within the Town's right-of-way."
[*9]
The Town did not submit an affidavit or map of a surveyor to rebut or contest the findings of defendants' surveyor. Therefore, the court must determine whether these uncontested facts provide the basis for a finding of liability on the part of the Town or, alternatively, raise material issues of fact sufficient to defeat the Town's summary judgment motion.
There is no question that a Town has the non-delegable duty of maintaining its roads and highways in a reasonably safe condition and that this duty extends to conditions adjacent to the highway (see, Finn v Town of Southhampton, 289 AD2d 285 [2nd Dept 2001] citing Stiuso v City of New York, 87 NY2d 889, 890-891; Nurek v Town of Vestal, 115 AD2d 116; Torres v Galvin, 189 AD2d 870). This encompasses an obligation to trim growth within the highway's right-of-way to assure visibility of stop signs and other traffic. However, to have such a duty, the municipality must own or control the highway (Nurek v Town of Vestal, 115 AD2d 116 [3rd Dept 1995]).
However, the Town relies upon Vehicle and Traffic Law § 1621 (a) (1) which provides that with respect to highways intersecting state highways:

"(a) The department of transportation with respect to state highways maintained by the state, the intersection of any highway with a state highway maintained by the state, and any highway intersecting or meeting a state highway maintained by the state for a distance not exceeding one hundred feet from such state highway maintained by the state, may by order, rule or regulation: [FN8]
 1. Designate through highways and order stop signs ... erected at specific entrances thereto or designate any intersection as a stop intersection...and order like signs or signals at one or more entrances to such intersections. (Vehicle and Traffic Law § 1621) [FN9]
There are two portions of this statute that are significant. The first is the portion that speaks of the state having the authority to designate through highways and order stop signs at intersections involving state highways for a "distance not exceeding one hundred feet from such state highway." The second portion is that which indicates that the state may exercise this authority by "order, rule or regulation." (Emphasis supplied).
Here, there is no dispute that the "Stop" sign at issue is within 100 feet of NYS Rte 31 at [*10]its intersecting point with Connors Road. Thus it appears that the distance portion of the statute has been satisfied.
In this regard, it has been repeatedly held that the State has jurisdiction over all State highways, the intersection of any highway with a State highway and any highway intersecting a State highway for a distance not exceeding 100 feet from the State highway (see, Ball v County of Monroe, 79 AD2d 878 [4th Dept 1980] [County relieved of duty with respect to the erection and maintenance of signs at intersection and thus had no responsibility for negligent signing at the intersection]; Mattice v Town of Wilton, 160 AD2d 1195 [3rd Dept 1990]; Cain v Pappalardo, 225 AD2d 1005 [3rd Dept 1996] ["The law provides that the State has jurisdiction over any highway intersecting a State highway for a distance not exceeding 100 feet."]; Federoff v Camperlengo, 215 AD2d 806 [3rd Dept 1995] [State has jurisdiction over the intersection of any highway with a State highway for a distance not exceeding 100 feet and, therefore, the burden of traffic control and highway maintenance extends to such area]).
However, there is nothing in this record to establish that the State exercised the §1621 authority or jurisdiction pursuant to an "order, rule or regulation." Defendants Federal Express and Smyth argue that § 1621 merely gives the State the authority to issue an order, rule or regulation allowing the State to enter onto another's land in order to perform one of the acts set forth in subsections 1 through 23 (d) of the statute. According to these Defendants, when the State issues one of the orders, etc., in respect to an intersecting highway, it undertakes a collateral duty of maintenance with the other municipality. [FN10]
 The issue of whether an "order, rule or regulation" is a prerequisite to the shifting of jurisdiction to the State within 100 feet of the intersection as spoken of in Mattice, Cain and Federoff, supra, appears to be one of first impression.
The Ball, Mattice, Cain and Federoff cases, supra, do not indicate whether there was an order, rule or regulation issued by the State. These cases do not address this issue in any fashion. However, the commentary to NYPJI 2:226A (Municipal Liability - Unsafe Equipment - Failure to Maintain Stop Sign) states that the pattern charge "assumes that the highway in question has been properly designated as a through highway and the erection of a stop sign ordered by the appropriate authority, see VTL § 1621 (state highways)" (1B NYPJI 3d at 1151).
The plain reading of Vehicle and Traffic Law § 1621 strongly favors the argument that an "order, rule or regulation" is a prerequisite to the shifting of jurisdiction for the intersection from the local municipality to the state. Here, the Town has not submitted any such order, rule or regulation.
[*11]
However, the scope of this court's legal analysis is not limited to the legal memorandums and authorities submitted by the parties. This court has an independent obligation to thoroughly examine, ascertain and apply the controlling law notwithstanding the scope of the legal authorities cited by the parties.
Here, the court has determined that 15 NYCRR § 2331.35 (Title 15, Department of Motor Vehicles Chapter IV. Intersectional Control Part 2331. Onondaga County, Town of Van Buren) contains a designation of the intersection between Route 31 and Connors Road as a "stop intersection" and a "Stop" sign was ordered to be installed at that intersection. [FN11]
Therefore, this court is bound to follow the Appellate Division cases which provide that the State has exclusive jurisdiction over a highway intersecting a state highway for a distance not exceeding 100 feet from the intersection. There being no proof that the Town undertook or assumed the duty of maintenance of the "Stop" sign at issue; and there being no dispute that the "Stop" sign was owned and installed by the State; this court finds that the Town was relieved of any duty to maintain the "Stop" sign as it was within 100 feet of the intersection and was therefore within the exclusive jurisdiction of the State (see, Cain v Pappalardo, 225 AD2d 1005 [3rd Dept 1996] [Trees obscuring "Stop" sign on county highway within 89 feet of intersection with State highway not the responsibility of the county]).
Therefore, the Town's motion for summary judgment is granted insofar as the "Stop" sign at the intersection of Connors Road with NYS Rte 31 is concerned, including any claim that the Town failed to trim overhanging branches allegedly obscuring the "Stop" sign.
The "Stop Ahead" Sign
The "Stop Ahead" sign is another story. There is no dispute that the "Stop Ahead" sign is situate beyond the 100 foot jurisdictional boundary of the State as provided for in Vehicle and Traffic Law § 1621. Thus, the § 1621 defense is not available to the Town in respect to this sign. This sign was installed by the State. However, it is located within the Town's right-of-way as shown upon the surveyor's map of Defendants Federal Express and Smyth.
Defendants Federal Express and Smyth advance two theories of potential liability against the Town insofar as this sign is concerned. The first theory is that the "Stop Ahead" sign was partially obscured by overgrown foliage which either was located upon or extended from the land within the Town's right-of-way. This theory is amply supported by Defendants' survey map which locates the "Stop Ahead" sign within the Town's right-of-way, more than 100 feet distant from the intersection with NYS Rte 31. The survey map illustrates the location and position of roadside foliage in reference to the "Stop Ahead" sign. The Town did not submit a survey of its own or otherwise contest the accuracy of Defendants' survey.
Additionally, Defendant Smyth submits a sworn affidavit which alleges that the "Stop [*12]Ahead" sign was obscured by foliage on the date and time of this accident. Smyth points to photographs annexed to his affidavit which he attests fairly and accurately depict the manner in which the "Stop Ahead" sign was obscured at the time of the accident. In this court's view, those photographs do depict sufficient obscuring of the "Stop Ahead" sign by foliage to support Defendants' theory at this procedural juncture. [FN12]
Defendants Federal Express and Smyth have a second theory of potential liability as against the Town in reference to the "Stop Ahead" sign. This theory alleges that the bridge clearance marker signs conflicted with the "Stop Ahead" sign such that Mr. Smyth was caused to look down and away from the "Stop Ahead" sign. This theory has support from Defendants' traffic engineering expert (James Napoleon) who opines that:

"The proximity of the clearance markers and the STOP AHEAD sign at the time of the accident violated good and acceptable traffic engineering principles by creating confusing visual conflict. Clearance markers are designed to draw a driver's attention downward and to the pavement of the bridge. In this particular case, the clearance markers caused Mr. Smyth to look down away from the STOP AHEAD sign. It is a deviation from acceptable
engineering standards and customary practice for the Town not to notify the State of its placement of clearance markers on the bridge which would allow the State the opportunity to adjust the position of its STOP AHEAD sign so that it is not in close proximity to the clearance marker, thereby creating a confusing visual conflict."
Mr. Napoleon's affidavit goes on to correctly point out that the Town's representative (Mr. Park) was unable to indicate which was installed first, the clearance markers or the "Stop Ahead" sign. [FN13]
Notably, the State DOT engineer, Raymond McDougall, testified as follows:

"A. In my opinion, the clearance markers were making it a little more difficult to [*13]fully observe the stop ahead sign. Q. And was that because the clearance markers are designed to draw the motorist attention to those markers? A. Yes. Q. And if the motorist's attention was drawn to the markers, that would-did you feel that that might create a conflict with the motorist also being able to observe the stop ahead sign? A. Yes." (MacDougall Tr. at 15-19). [FN14]
The Town did not submit an affidavit from an expert of any kind which rebutted or challenged the opinions of Mr. Napoleon or Mr. MacDougall.
Mr. Smyth testified that he did not observe the "Stop Ahead" sign before encountering the "Stop" sign. The photographs annexed to Mr. Smyth's affidavit amply demonstrate a potential visual conflict between the two forms of signage. [FN15] Again, the court is mindful of the Town's arguments that the "Stop Ahead" sign was visible to Mr. Smyth but this merely creates a question of fact that must be determined by a jury.
Accordingly, the Town's motion for summary judgment is denied in respect to Defendants Smyth's and Federal Express's obscured "Stop Ahead" sign and "confusing visual conflict" theories of liability.
Plaintiff's Comparative Fault Plaintiff seeks dismissal of defendants Smyth's and Federal Express's affirmative defense relating to the alleged culpable conduct of Plaintiff. For the reasons set forth in footnote six of this decision, the court finds that there are questions of fact as to which party had the right-of-way when entering this intersection. Thus, plaintiff's motion seeking dismissal of this affirmative defense is denied.
This constitutes the decision of the Court. Counsel for Defendants Federal Express and Smyth to submit proposed order on notice.
[*14]
Enter
EDWARD D. CARNI, J.S.C.

Decision Date: January 09, 2004
Footnotes

Footnote 1: Plaintiff's counsel, in an affirmation, argues that a NYS DOT engineer (Raymond T. McDougall) testified at a deposition and opined that "the reasonable rate of speed for vehicles [on Connors Road] is thirty to forty miles an hour." This is a mischaracterization of Mr. McDougall's testimony. The question put to Mr. McDougall by Plaintiff's counsel was "And did I hear you correctly give some type of opinion as to what you thought or your estimation as to what the average rate of speed would be for vehicles under these circumstances?" A. "Yes" Q. "And what is your opinion?" A. "It looked to me like a situation where cars would be going typically 30 to 40 miles an hour." Cast in a light most favorable to Plaintiff, this testimony establishes only that Mr. McDougall believes that the average vehicle would travel 30-40 mph at this location. In no way does it establish a reasonable rate of speed for the conditions then and there existing. The average speed of a vehicle traveling this road and what the reasonable rate of speed would be for the accident conditions are two completely different things. The average rate of speed of vehicles on this road, in this court's view, is an immaterial issue in reference to Defendants Smyth's and Federal Express's culpability and provides no support for Plaintiff's liability theory.

Footnote 2: Plaintiff did testify that while employed at Penn traffic between 1997 and 1999 he drove NYS Rte 31 in the vicinity of Connors Road on his way to work "pretty much every day" and thereafter "four or five times a month" (Beaumont TR at 19).

Footnote 3: The contention that an accident is "preventable" in an accident report adds little or nothing to the liability analysis at hand.

Footnote 4: This requirement is mirrored in Vehicle and Traffic Law § 1110 (b) which provides that traffic signs are not to be enforced against an alleged violator unless the sign is in "proper position and sufficiently legible to be seen by an ordinarily observant person." Here, there is no dispute that the "Stop" sign was in a proper position. However, there is a factual dispute as to whether the "Stop Ahead" sign was in a proper position in reference to the bridge clearance marker signs. Moreover, the parties sharply dispute whether both signs were sufficiently "visible" or "legible" to be seen." This court finds no material distinction between the use of the "sufficiently visible" standard in NYPJI 2:80B and the "sufficiently legible" standard in Vehicle and Traffic Law § 1110 (b). The NYPJI commentary to 2:80B uses the two standards interchangeably.

Footnote 5: A "through highway" is one that is given preferential right-of-way, and at the entrances to which vehicular traffic from intersecting highways is controlled by traffic control signals or signs when such signs or signal are erected as provided in the Vehicle and Traffic Law (see, Vehicle and Traffic Law § 149. Through highway). Here, if the signage was obscured and Smyth did not know Rte 31 was a "through highway", Plaintiff would have no basis to claim a superior right-of-way as against defendant Smyth if they entered the intersection at the same time.

Footnote 6: Here, there is no dispute that Plaintiff's motorcycle was approaching from the left of Defendant Smyth's vehicle. The testimony suggests that both vehicles entered the intersection at the same time. Thus, insofar as Defendants Federal Express's and Smyth's liability to Plaintiff is concerned, it is entirely possible that the jury could conclude that the "Stop" sign and "Stop Ahead" sign were obscured, Smyth did not know there was an intersecting through highway ahead, the vehicles entered the intersection at the same time and Plaintiff (as the operator approaching from the left) was required to yield the right-of-way to Smyth's vehicle on the right. This is not to say that, were the jury to follow this pathway, liability would not potentially lie in Plaintiff's favor against the entity responsible for the allegedly obscured or defective signage. However, Plaintiff has chosen not to oppose the Town's motion for summary judgment and this court has no jurisdiction over any claim against the State of New York. 

Footnote 7: The Town incorrectly states in its memorandum of law that "Town Local Law # 3 requires that, before the Town may be held liable for damages for alleged defects or obstructions in its roadways or signage..." (Emphasis supplied). Local Law # 3 does not speak of or address signage.

Footnote 8: The statute speaks of the 100 feet of length of the highway but does not address the width or shoulders of the highway. However, the term "highway" as defined in V & T § 118 includes "the entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel."

Footnote 9: To a lesser extent, the Town also relies upon Vehicle and Traffic Law § 1681 which authorizes the department of transportation to order the installation of traffic control devices on highways intersecting State highways as it may deem necessary to carry out the provisions of the V & T Law.

Footnote 10: The Court of Appeals has recognized a collateral duty of maintenance between two municipalities in respect to a county road bordered by village property containing trees that overhang the road (see, Harris v Village of East Hills, 41 NY2d 446, 449 [1977]). However, this doctrine is not applicable to the State in respect to Vehicle and Traffic Law §1621 and a town, county or village road (see, Ball v County of Monroe, 79 AD2d 878).

Footnote 11: The last amendment to this regulation has an effective date of August 12, 1980 and thus, there is no question that this regulation was in effect on the date of this accident.

Footnote 12: The court is mindful that the Town argues that the "Stop Ahead" sign "shows up vividly on several still images from the videotape taken by Mr. Smyth and/or his friends on the evening of the accident date." This argument suffers from the same deficiencies as that of Plaintiff previously discussed herein. It is for a jury, not this court at this juncture, to determine which witness is credible and which photo(s) or film fairly and accurately depicts the road, signage and line of sight conditions confronting Mr. Smyth on Connors Road at the time of this accident.

Footnote 13: Insofar as Defendants' "confusing visual conflict" theory and the Town's prior written notice defense are concerned, the court finds that even if the prior written notice requirement applied to this defect, there still exists a question of fact whether the Town caused and created this alleged defect, thus rendering the prior written notice statute inapplicable (see, Lauer v Great South Bay Seafood, Co., LTD., 299 AD2d 325, 326 [2d Dept 2002] [The creation of the defect or hazard by an affirmative act of negligence by the Town is an exception to the written notice requirement]).

Footnote 14: The court is mindful that "post-remedial measures" are not admissible to establish negligence against a party. Here, however, Mr. MacDougall is speaking of his observations and opinions of the signage after the accident but prior to any post-accident corrective measures.

Footnote 15: It may very well turn out that a jury finds that these photos are not a fair and accurate representation of the accident conditions, line of sight, etc. confronting Mr. Smyth. However, it is the not province of this court to make that determination at this procedural juncture.